UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of Itself, and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>DAN R. HESSE, JOSEPH J. EUTENEUR, ROBERT H. BRUST, PAUL N. SALEH, JAMES H. HANCE, JR., ROBERT R. BENNETT, GORDON M. BETHUNE, LARRY C. GLASSCOCK, V. JANET HILL, FRANK IANNA, SVEN-CHRISTER NILSSON, WILLIAM R. NUTI, and RODNEY O'NEAL,<br><br>        Defendants,<br>    -and-<br><br>SPRINT NEXTEL CORP.,<br><br>        Nominal Defendant. | Civil Action No.  1:12-cv-04017-ALC-JCF<br><br>ECF Case Electronically filed |

## REPLY IN SUPPORT OF MOTION TO DISMISS

| | |
|---|---|
| CHADBOURNE & PARKE LLP<br>Thomas J. McCormack<br>Marc D. Ashley<br>Robert Kirby<br>30 Rockefeller Plaza<br>New York, NY 10112<br><br>*Attorneys for the Individual Defendants*<br><br>Dated:  November 16, 2012 | PILLSBURY WINTHROP SHAW PITTMAN LLP<br>E. Leo Milonas<br>David G. Keyko<br>1540 Broadway<br>New York, NY 10036<br><br>*Of counsel:*<br>Dane H. Butswinkas<br>David S. Blatt<br>Kenneth J. Brown<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, DC  20005<br><br>*Attorneys for Defendant Sprint Nextel Corp.* |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| ARGUMENT | | 2 |
| I. | Assessing Demand Futility Requires a Rigorous Review of Plaintiff's Allegations. | 2 |
| II. | *Rales* Applies In This Case. | 3 |
| III. | The NYAG's Allegations, and Sprint's Decision to Fight Them, Do Not Establish Demand Futility. | 5 |
| IV. | Plaintiff's Remaining Arguments Do Not Establish Demand Futility. | 9 |
| V. | Plaintiff's Corporate Waste and "Contribution or Indemnification" Claims Should Be Dismissed. | 10 |
| CONCLUSION | | 10 |

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 2

*Ferre v. McGrath*, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ................................................. 9

*Fink v. Komansky*, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004) .................................................. 6

*Geer v. Cox*, 242 F. Supp. 2d 1009 (D. Kan. 2003) ..................................................................... 4

*Giannullo v. City of New York*, 322 F.3d 139 (2d Cir. 2003) ...................................................... 7

*In re Abbott Labs.*, 325 F.3d 795 (7th Cir. 2001) ......................................................................... 9

*In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 2012 WL 3293506
    (S.D.N.Y. Aug. 14, 2012) ...................................................................................................... 10

*In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165 (D. Del. 2009) ............................................. 8

*In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502 (S.D.N.Y. 2008) ........................................ 8, 9

*In re Johnson & Johnson Deriv. Litig.*, 2011 WL 4526040 (D.N.J. Sept. 29, 2011) .................... 8

*In re Lehman Bros. Secs. & ERISA Litig.*, 2011 WL 4632885 (S.D.N.Y. Oct. 5, 2011) ............. 7

*In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d 317 (S.D.N.Y. 2008) .................................. 4

*In re Oxford Health Plans, Inc.*, 192 F.R.D. 111 (S.D.N.Y. 2000) .............................................. 6

*In re Pfizer, Inc.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010) ........................................................... 5, 8

*In re United Telecomms., Inc., Secs. Litig.*, 1993 WL 100202 (D. Kan. Mar. 4, 1993) ............. 10

*In re Veeco Instr., Inc. Secs. Litig.*, 434 F. Supp. 2d 267 (S.D.N.Y. 2006) .................................. 9

*Jackson v. N.Y. State Office of Mental Health*, 2012 WL 3457961
    (S.D.N.Y. Aug. 13, 2012) ...................................................................................................... 10

*Kaufman v. Kansas Gas & Elec. Co.*, 634 F. Supp. 1573 (D. Kan. 1986) .................................... 3

*Kernaghan v. Franklin*, 2008 WL 4450268 (S.D.N.Y. Sept. 29, 2008) ....................................... 6

*LAMPERS v. Blankfein*, 2009 WL 1422868 (S.D.N.Y. May 19, 2009) ...................................... 9

*LAMPERS v. Pandit*, 2009 WL 2902587 (S.D.N.Y. Sept. 10, 2009) ........................................... 9

*Randolph v. Forsee*, 2010 WL 5148293 (D. Kan. Dec. 13, 2010) ..................................................2

*Strickland v. Hongjun*, 2011 WL 2671895 (S.D.N.Y. July 8, 2011) ..............................................6

*U.S. Fidelity & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820 (D. Kan. 1996) .................................10

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) ........................................................9

**STATE CASES**

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ...................................................................................9

*In re Caremark Int'l. Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) ..................................3

*In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009) ............................7

*Newton v. Hornblower*, 582 P.2d 1136, 1141 (Kan. 1978) ............................................................2

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ................................................................................3

*South v. Baker*, 2012 WL 4372538 (Del. Ch. Sept. 25, 2012) .......................................................9

*Waltrip v. Sidwell Oil & Gas, Inc.*, 774 P.2d 948 (Kan. 1989) ....................................................10

*Wood v. Baum*, 953 A.2d 136 (Del. 2008) ......................................................................................7

**RULES**

Fed. R. Civ. P. 23.1 ...........................................................................................................................2

Plaintiff's Complaint alleges no facts that, if proved, would show that any Sprint Director was even aware of—much less made any decision regarding—the tax de-bundling issue challenged by the New York Attorney General ("NYAG"). None. And it certainly does not plead particularized facts showing that any Director knowingly caused Sprint to violate New York law, as required to establish demand futility. That is not surprising; Plaintiff filed this lawsuit a mere 11 days after the NYAG filed the underlying tax case (the "State Court Action"), having gathered no facts showing that any Director was involved with the tax de-bundling issue. That is the beginning and end of the demand futility analysis.

Plaintiff's Opposition does not (and cannot) cure these defects. Instead, it recites the NYAG's allegations in the State Court Action. It is telling that Plaintiff spends much of its time parroting allegations that do not mention any Director, drawn from a case that does not concern the Directors' liability. Plaintiff also repeats its troubling claim that demand is futile because Sprint is fighting the NYAG's allegations. By Plaintiff's rationale, any time the government makes a disputed allegation of corporate wrongdoing, the directors (assuming they are the decision-makers) have two choices: (1) capitulate to the erroneous allegation, which might itself violate their fiduciary duties to shareholders; or (2) contest the allegation, thereby supposedly establishing their personal liability for willful misconduct (and thus demand futility). The law, however, does not put directors to such a Hobson's choice.

Plaintiff's remaining arguments—that certain Directors serve on committees and cannot be expected to sue themselves—are stock contentions that are rejected as a matter of course.

Finally, certain "quotations" in the Opposition have been edited to make them appear to support Plaintiff's position, when in fact they do not. *See infra* notes 7 & 10. For all of these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## ARGUMENT

**I.     Assessing Demand Futility Requires a Rigorous Review of Plaintiff's Allegations.**

The parties agree that federal procedural law and Kansas substantive law apply in this case, and that "Kansas courts . . . will look to the decisions of the Delaware courts for guidance in making a determination regarding demand futility."  Opp. at 12; Defs.' Mem. in Suppt. of Mot. to Dismiss ("Mem.") at 8 n.5 (citing cases).  Plaintiff, however, suggests that Kansas employs a "lenient standard" to assess demand futility, Opp. at 12 (quotations omitted), erroneously implying that the Court should not rigorously examine its complaint.[1]  The "lenient" language comes from *Newton v. Hornblower*, and the full quotation is:  "The courts are generally lenient in excusing the need for a demand prior to bringing a stockholder derivative action ***when a petition or complaint recites circumstances that would make the demand futile or useless***."[2] 582 P.2d 1136, 1141 (Kan. 1978).  As subsequent Kansas authority clarifies:

> If the complaint does recite sufficient facts to establish futility, courts are generally lenient in excusing demand. . . .  This standard does not mean a court will be lenient in finding there are sufficient facts pled to establish futility.  Rather, it means that *if* the court finds sufficient facts *are* pled, then it will be lenient in excusing demand—a matter within its discretion. . . . [B]ecause of the important policy behind this rule, the demand requirement of Rule 23.1 should be ***rigorously enforced***.[3]

---

[1] Plaintiff's criticism of Defendants for not citing *Randolph v. Forsee*, 2010 WL 5148293 (D. Kan. Dec. 13, 2010), is unfounded.  *See* Opp. at 12 n.59.  Demand futility was ***not*** adjudicated in *Randolph*, which remanded the case for lack of federal subject matter jurisdiction.  *See* 2010 WL 5148293, at *8, 10.  Even to date, demand futility has not been decided on remand.

[2] All emphases are added unless otherwise noted.

[3] Even with this limitation, it is not apparent that the "lenient" language applies in this federal action.  That language was a product of *Newton*'s application of *Conley v. Gibson*'s "no set of facts" standard for adjudicating motions to dismiss, which also applied in federal courts when *Kaufman* was decided in 1986.  *See* 582 P.2d at 1142 (quotation omitted).  That standard, however, no longer applies in federal proceedings.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007) (in federal actions, "no set of facts" standard has "earned its retirement"); Fed. R. Civ. P. 23.1 (demand futility must be pleaded "with particularity").

2

*Kaufman v. Kansas Gas & Elec. Co.*, 634 F. Supp. 1573, 1578 (D. Kan. 1986) (first two emphases in original) (internal quotations and punctuation omitted).

This is materially identical to Delaware's demand futility standard, *see* Mem. at 8 n.5, and Defendants, like Plaintiff, thus look to both Kansas and Delaware law in assessing Plaintiff's demand futility allegations. Indeed, Plaintiff argues at length that Delaware's *Aronson* standard governs demand futility in this case. Opp. at 15, 20-23. Although Defendants do not dispute Plaintiff's reliance on Delaware law, it is *Rales*—not *Aronson*—that applies here.

**II.     *Rales* Applies In This Case.**

"The essential predicate for the *Aronson* test is the fact that ***a decision of the board of directors*** is being challenged in the derivative suit." *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *see also* Mem. at 9.[4] Thus, for *Aronson* to apply, Plaintiff must plead particularized facts showing a "conscious decision by directors to act or refrain from acting." *Id.*

Here, *Rales* applies—and *Aronson*'s business judgment prong is inapplicable—because Plaintiff's Complaint identifies no such conscious decision by Sprint's Board. To be sure, the Complaint says nothing whatsoever about the behavior or decision-making of the Board regarding the tax de-bundling issue. Instead, it makes four allegations regarding demand futility—(1) red flags; (2) failure of oversight; (3) committee memberships; and (4) "insured versus insured exclusion"—none of which turns on any affirmative Board decision to act (or not to act). *See* Mem. at 9-10. Further, the Opposition confirms that Plaintiff's theory is based on the Board "not acting." Opp. at 2 (claiming Board liable for "***not acting*** to stop the tax scheme (or turning a blind eye to it)"); *id.* at 11 (to the same effect); *id.* at 17 (claiming Directors "breached their fiduciary duties in ***failing to address*** the multi-year tax evasion scheme."); *id.* at

---

[4] *See In re Caremark Int'l. Inc. Derivative Litig.*, 698 A.2d 959, 968 (Del. Ch. 1996) (most corporate decisions "are, of course, not the subject of director attention. Legally, the board itself will be required only to authorize the most significant corporate acts or transactions . . . .").

3

20 (claiming Directors face individual liability for "**failure to implement the appropriate controls**"). Consequently, there is no business judgment to attack or defend, and *Rales* applies. *See* Mem. at 9-10; *In re Morgan Stanley Deriv. Litig.*, 542 F. Supp. 2d 317, 322 (S.D.N.Y. 2008) (applying *Rales* because "isolated and conclusory references" to board's "conceal[ment] of, or failure to disclose" Wells Notice "are insufficiently particularized to allege a specific board decision . . . . There are no particularized allegations as to when any board member had any knowledge of the Wells Notice, no allegations explaining any process by which the board decided to omit the information, and no allegation that the board actively or purposefully made a decision to omit the information.") (internal citations omitted).

Plaintiff's argument that *Aronson* should apply notwithstanding the Complaint's lack of allegations regarding any Director is puzzling and self-defeating. *See* Opp. at 20-23. Nowhere in its three-page discussion of this issue does Plaintiff suggest that the Complaint *does* plead particularized facts showing the Board made a conscious decision with respect to the tax de-bundling issue. *See id.* Instead, it states: "Defendants insinuate . . . that they did *not* have knowledge of the illegal tax evasion scheme, establishing *a priori*, that they did not 'exercise procedural due care' in reaching 'an informed decision.'" Opp. at 21 (quotation omitted); *id.* ("[H]aving seemingly disavowed any knowledge of the New York tax issue, Defendants cannot be heard to claim that it [sic] followed a sound procedure and reached an informed decision regarding that issue.").[5] These assertions confirm that *Aronson* does ***not*** apply. If the Directors did not know about the tax issue, they could not have made any decision about it, underscoring

---

[5] Plaintiff cites *Geer v. Cox*, 242 F. Supp. 2d 1009, 1019 (D. Kan. 2003), for the proposition that a board decision must have been undertaken with procedural due care in order to satisfy the business judgment rule. *See* Opp. at 21. That, of course, presupposes that a decision was made in the first place, which is precisely what Plaintiff fails to plead. To that end, Defendants do not actually "insinuate" or "disavow" anything about the Directors' conduct. Rather, they identify defects in Plaintiff's Complaint, which is the proper focus of this motion.

4

the applicability of *Rales*, not *Aronson*. This result is further confirmed by the arguments Plaintiff makes following this discussion, which rely on the NYAG's allegations of wrongdoing by the "Company" without identifying a single assertion in the Complaint about any Director. *See* Opp. at 21-23.

A comparison of this case with *In re Pfizer, Inc.*, on which Plaintiff relies, highlights the Complaint's failure to plead facts showing conscious Board action. In *Pfizer*, certain settlement agreements required Pfizer's board to receive direct reports of misconduct. 722 F. Supp. 2d 453, 460-61 (S.D.N.Y. 2010). And the complaint in that case pleaded particularized facts showing that was precisely what occurred. It "detail[ed] at great length a large number of reports made to members of the board from which it may reasonably be inferred that they all knew of Pfizer's continued misconduct and chose to disregard it." *Id.* at 460. The court agreed that an "absence of particularized allegations as to what each director knew and what he or she did about that knowledge would not support excusing demand." *Id.* at 461. But, it held that the opposite conclusion was appropriate "[u]nder the unique facts of [*Pfizer*]." *Id.* Here, Plaintiff pleads no particularized facts showing that any Director was even aware of the tax de-bundling issue.

### III. The NYAG's Allegations, and Sprint's Decision to Fight Them, Do Not Establish Demand Futility.

Having pleaded no facts about what any Director knew or did regarding tax de-bundling, Plaintiff resorts to arguing demand futility based on the NYAG's filings, which do not mention any Director. Plaintiff also relies on the fact that Sprint is fighting the NYAG's allegations: "If ever there was a case where demand should be deemed futile it is here, where Defendants have ***expressly*** stated that they will not take action to cease the illegal tax evasion scheme . . . ."[6] Opp. at 11-12 (emphasis in original).

---

[6] No Director stated that. *See* Opp. at 11 (press release issued by "the Company").

5

Plaintiff is wrong on the law. Demand futility does not turn on "whether a shareholder reasonably expects the board to refuse a demand, but rather whether there is reasonable doubt as to the board's impartiality to consider a demand." *Strickland v. Hongjun*, 2011 WL 2671895, at *2 (S.D.N.Y. July 8, 2011) (applying law of Nevada, which "has explicitly adopted" Delaware law of demand futility). To be sure, even if, *arguendo*, the Board would likely refuse Plaintiff's demand, that does not mean any Director is interested. It might just as likely mean the demand lacks merit.[7] In fact, by Plaintiff's rationale, the more frivolous a demand (and the more likely it would be properly rejected), the more likely demand would be excused and a derivative action allowed to proceed. The law, however, avoids this absurd result, as Plaintiff must show that a majority of Sprint's current directors face a "substantial likelihood" of personal liability, making them incapable of fairly ***considering*** a demand. *See* Mem. at 9-11. Given the exculpatory provision in Sprint's articles of incorporation, Plaintiff can do so only by "plead[ing] particularized facts that demonstrate that the directors had 'actual or constructive knowledge'

---

[7] Plaintiff cites *In re Oxford Health Plans, Inc.*, 192 F.R.D. 111 (S.D.N.Y. 2000), in claiming demand is excused whenever a board is likely to reject the demand. Opp. at 14. As discussed above, that is not, and could not be, the law. *Oxford*—although it has been criticized for a lack of specificity on this point, *see Kernaghan v. Franklin*, 2008 WL 4450268, at *6 (S.D.N.Y. Sept. 29, 2008)—states that its holding is ***not*** based on the abstract proposition that demand would have been rejected, but rather on the plaintiff having pleaded specific facts, including insider trading, that, if proved, would have subjected the directors to personal liability. *See* 192 F.R.D. at 117 (complaint "alleges with particularity the reckless failure of these defendants . . . in supervising or monitoring the affairs of the company."); *Fink v. Komansky*, 2004 WL 2813166, at *4 (S.D.N.Y. Dec. 8, 2004) (distinguishing *Oxford* on ground that plaintiff "pleaded specific facts to show defendants had knowledge of false records and intentionally caused the company harm").
  To support its reading of *Oxford*, Plaintiff misleadingly edits its block quote from the case. Opp. at 14. Plaintiff omits the first clause of the first sentence: "As their last argument." *Oxford*, 192 F.R.D. at 116 ("As their last argument, Plaintiffs point out . . . ."). It also omits the paragraph break following that first sentence. Together, these edits create the misimpression that the block quote is one continuous passage flowing from the first sentence. But as discussed, the opposite is true.

that their conduct was legally improper."[8]  *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (quotation omitted); Mem. at 11-12.

Neither the NYAG's allegations nor Sprint's decision to fight those allegations remotely satisfies that standard. The NYAG's filings do not even mention any Director.[9] And as a matter of law, the Company's decision to challenge and move to dismiss the NYAG's allegations does not establish that the Directors knowingly acted illegally. The Complaint pleads no particularized facts showing that this decision was even made at the Board level, much less that any Director believed the NYAG's allegations were well-founded but decided to contest them anyway. The absence of such allegations ends this inquiry.

Nonetheless, Plaintiff asserts that the Court may "infer" that the Board knew it was acting illegally because "there is a corporate governance structure in place." Opp. at 17. That too is not the law. *See, e.g.*, *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009) ("[D]irector liability is not measured by the aspirational standard established by the internal documents detailing a company's oversight system. Under our law, to establish liability . . . plaintiffs must show that the [director acted] knowingly or in bad faith."). Every bona fide company has a corporate governance structure. If that generic fact were sufficient to establish what a Director knew or did, it would negate the law requiring particularized allegations on these

---

[8] Contrary to Plaintiff's assertion, Opp. at 16, Defendants accurately quoted (and applied) the entire exculpatory provision, carve outs included. *See* Mem. at 11-12. To be sure, Plaintiff does not dispute that even gross negligence, or any alleged breach of the duty of care, is insufficient to subject the Directors to personal liability absent scienter. *See* Opp. at 16.

[9] Even as to Sprint, the disputed allegations in the NYAG's complaint and opposition brief do not establish any violation of law. *See Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir. 2003) (memorandum of law "is not evidence at all"); *In re Lehman Bros. Secs. & ERISA Litig.*, 2011 WL 4632885, at *5 (S.D.N.Y. Oct. 5, 2011) (complaints consist "only of allegations, not evidence."); Dkt. 29 at 2 (Plaintiff conceding these filings not properly considered for truth of allegations therein). Plaintiff erroneously asserts that Sprint's tax liability is "seemingly uncontroverted," Opp. at 21, citing only the NYAG's disputed allegations and ignoring Sprint's Motion to Dismiss. *See id*.

issues, and demand futility would be the rule. Indeed, this argument is based on a distortion of the only case Plaintiff cites to support it.[10]

Moreover, the idea that to avoid personal liability directors must cause their company to accede whenever the government presses a disputed legal position, particularly on an issue of first impression (such as the de-bundling issue in the State Court Action), is troubling. If that were the law, directors—assuming the decision was made by the board—would be forced to choose between (a) capitulating to the allegation, potentially in violation of their fiduciary duties; or (b) contesting the allegation, thereby establishing their personal liability. Demand would be excused whenever the company chose to defend itself, thus enabling the government to exert enormous leverage on directors to abandon meritorious legal positions.

But that also is not the law. The State makes mistakes too, and the decision to contest governmental allegations of corporate wrongdoing, absent more, is not a basis for finding demand futility. *See, e.g.*, *In re Johnson & Johnson Deriv. Litig.*, 2011 WL 4526040, at *2, 17-18 (D.N.J. Sept. 29, 2011); *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 169, 176 (D. Del. 2009); Mem. at 17-18. It is Plaintiff's burden to plead with particularity facts showing that a majority of Directors caused Sprint to fight the NYAG's allegations, and knew that by doing so they were engaging in illegal conduct. *See, e.g.*, *In re ITT Corp. Deriv. Litig.*, 588 F. Supp. 2d 502, 515 (S.D.N.Y. 2008). Plaintiff, however, has not begun to carry that burden.

---

[10] The first sentence in the block quotation on page 17 of the Opposition, referencing a corporate governance structure, is actually an unattributed parenthetical from a "*cf.*" citation. The phrase "[i]n such circumstances" does **not** refer to that parenthetical, but instead to the preceding sentence, which Plaintiff omits from the block quotation. *In re Pfizer*, 722 F. Supp. 2d at 461. In that sentence, the court discussed the reporting requirement under the pertinent settlement, which "guarantee[ed] that each member of the board was bombarded with allegations of continuing misconduct." *Id.* It was **those** circumstances from which the court inferred board knowledge, *see id.*, not the mere presence of a corporate governance structure, as Plaintiff misleadingly suggests. Opp. at 17. As discussed, no analogous circumstances are present here.

### IV. Plaintiff's Remaining Arguments Do Not Establish Demand Futility.

Plaintiff claims that "[t]he scope and severity of the illegal scheme alleged, combined with Defendants' majority membership on key Board committees, demonstrates the likelihood that Defendants will be found liable for breach of their fiduciary duties . . . ." Opp. at 16. But the NYAG's allegations of an "illegal scheme" do not mention any Director. Nor does a Director's committee membership establish demand futility. *See South v. Baker*, 2012 WL 4372538, at *11 & n.6 (Del. Ch. Sept. 25, 2012) (citing cases); Mem. at 21 (citing more cases).[11] As the court held in *ITT Corp.*, "[a] derivative complaint that recites descriptions of *employee* misconduct taken from the criminal case filings, combined with generalities about Board responsibilities, is insufficient to meet a plaintiff's burden to plead particularized facts showing a substantial likelihood of liability on the *directors*' parts." 588 F. Supp. 2d at 515 (emphasis in original). Similarly, the stock contention that directors cannot be expected to sue themselves, *see* Opp. at 13, is rejected as a matter of course. *See, e.g.*, *LAMPERS v. Pandit*, 2009 WL 2902587, at *9 (S.D.N.Y. Sept. 10, 2009); *Brehm v. Eisner*, 746 A.2d 244, 257 n.34 (Del. 2000).[12]

---

[11] In *In re Veeco Instr., Inc. Secs. Litig.*, cited by Plaintiff (Opp. at 17-18), demand futility was not based on mere committee membership. Instead, each committee member signed a form explicitly stating that "a deficiency existed in the internal control over financial reporting," yet took no action for more than a year following this admission. 434 F. Supp. 2d 267, 277 (S.D.N.Y. 2006). *Veeco* is regularly distinguished from cases like this one, in which the complaint pleads no analogous facts. *See Ferre v. McGrath*, 2007 WL 1180650, at *9 (S.D.N.Y. Feb. 16, 2007) ("[T]his case is radically at variance with *Veeco*, where the pleading contained particularized factual allegations (not just conclusory assertions) about the defendant directors' actual knowledge of, and inaction in the face of, extensive corporate wrongdoing."); *In re ITT Corp. Derivative Litig.*, 653 F. Supp. 2d 453, 464 n.6 (S.D.N.Y. 2009) (also distinguishing *In re Abbott Labs.*, 325 F.3d 795 (7th Cir. 2001), *cited by* Opp. at 20, on similar basis); *LAMPERS v. Blankfein*, 2009 WL 1422868, at *5 (S.D.N.Y. May 19, 2009) (same).

[12] Plaintiff's allegations regarding Sprint CEO Dan Hesse do not appear in the Complaint. *See* Opp. at 19-20; *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (allegations first made in opposition to motion to dismiss not properly considered). In addition, Mr. Hesse is one of ten Sprint Directors, of whom only a majority must be disinterested to defeat demand futility. Thus, even accepting Plaintiff's arguments regarding Mr. Hesse, demand would be not excused.

V.  **Plaintiff's Corporate Waste and "Contribution or Indemnification" Claims Should Be Dismissed.**

Plaintiff's failure to establish demand futility requires dismissal of each of its claims. *See In re Goldman Sachs Mortg. Servicing S'holder Derivative Litig.*, 2012 WL 3293506, at *11 (S.D.N.Y. Aug. 14, 2012). Moreover, because the Complaint fails to plead facts regarding the Board, no Director can be found to have "authorized" corporate waste or to have committed any act rendering him or her liable for indemnification or contribution. Plaintiff responds by recycling its inadequate contentions regarding demand futility, *see* Opp. at 23-24, but identifies no allegation in the Complaint of Board conduct sufficient to state these claims.

Nor is Plaintiff's contribution claim cognizable. *See* Mem. at 23-24. Plaintiff responds that it may pursue a claim for *equitable* contribution, Opp. at 25, but its own authorities hold otherwise. *See Waltrip v. Sidwell Oil & Gas, Inc.*, 774 P.2d 948, 954-55 (Kan. 1989) (equitable contribution *not* available to parties "not jointly liable in contract" or "joint debtors"); *U.S. Fidelity & Guar. Co. v. Sulco, Inc.*, 939 F. Supp. 820, 823 (D. Kan. 1996) (to the same effect).[13]

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' opening memorandum, Plaintiff's Complaint should be dismissed with prejudice.[14]

---

[13] Nor are these claims ripe. *See* Mem. at 23-24. Plaintiff's assertions regarding defense costs and market capitalization are not only unfounded, but absent from Complaint. Opp. at 24, 25 & 9 n.47. "[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Jackson v. N.Y. State Office of Mental Health*, 2012 WL 3457961, at *12 (S.D.N.Y. Aug. 13, 2012) (quotation omitted). Moreover, Plaintiff's boilerplate allegation of "harm to the Company's goodwill," Compl. ¶ 30, is precisely the sort of "unadorned, the-defendant-unlawfully-harmed-me accusation" that is insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also In re United Telecomms., Inc., Secs. Litig.*, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) (conclusory allegation of lost goodwill insufficient).

[14] At the pre-motion conference, the Court offered Plaintiff the chance to amend. Plaintiff, however, declined. *See* Individual Practices of Hon. Andrew L. Carter, Jr. ¶ 2(D)(ii).

Dated: November 16, 2012
      New York, NY                  Respectfully submitted,

                                        CHADBOURNE & PARKE LLP

                                        By    /s/ Thomas J. McCormack
                                                  Thomas J. McCormack
                                                  Marc D. Ashley
                                                  Robert Kirby
                                                  30 Rockefeller Plaza
                                                  New York, NY 10112
                                                  E-Mail:  tmccormack@chadbourne.com

                                                  *Attorneys for the Individual Defendants*


                                        PILLSBURY WINTHROP SHAW PITTMAN LLP

                                        By    /s/ E. Leo Milonas
                                                  E. Leo Milonas
                                                  David G. Keyko
                                                  1540 Broadway
                                                  New York, NY 10036
                                                  E-Mail:  eleo.milonas@pillsburylaw.com

                                                  *Of counsel:*

                                                  Dane H. Butswinkas
                                                  David S. Blatt
                                                  Kenneth J. Brown
                                                  WILLIAMS & CONNOLLY LLP
                                                  725 Twelfth Street, N.W.
                                                  Washington, DC  20005
                                                  E-Mail:  dbutswinkas@wc.com

                                                  *Attorneys for Defendant Sprint Nextel Corp.*